IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 03-cv-01959-MSK-PAC

AHMED M. AJAJ,

      Plaintiff,

v.

UNITED STATES OF AMERICA,
ROBERT A. HOOD,
JAMES BURRELL,
DAVID DUNCAN,
C. CHESTER, and
J.C. ZUERCHER,

      Defendants.

---

**ORDER DENYING THE UNITED STATES' MOTION TO DISMISS AND
GRANTING, IN PART, THE FEDERAL OFFICERS' MOTION TO DISMISS**

---

THIS MATTER comes before the Court on the following motions: (1) Plaintiff Ahmed

M. Ajaj's Unopposed Motion to Re-File Third Amended Complaint (**#165**);[1] (2) the United States

of America's Motion to Dismiss Claim One of the Third Amended Complaint Pursuant to Fed. R.

Civ. P. 12(b)(1) (**#162**), to which Mr. Ajaj responded (**#169**) and the United States replied

(**#175**); and (3) the Federal Officers'[2] Motion to Dismiss Third Amended Complaint Pursuant to

---

[1] This motion asks the Court to strike and replace the Third Amended Complaint (**#160**) because of a technical glitch in filing.  Such motion was referred to the Magistrate Judge for determination.  Because no ruling has yet been issued on the motion and a determination of the motion must precede determination of the remaining motions, the Court withdraws the reference of such motion.  The motion is granted to the extent that the Plaintiff seeks to file a revised Third Amended Complaint.

[2] For purposes of this ruling, "Federal Officers" is a collective reference to all Defendants apart from the United States.

Fed. R. Civ. P. 12(b)(6) (**#163**), to which Mr. Ajaj responded (**#170**) and the Federal Officers replied (**#177**).  Having considered the same, the Court finds and concludes as follows.

## I.  Jurisdiction

For purposes of determining the pending motions, the Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## II.  Background

Mr. Ajaj is currently incarcerated at the United States Penitentiary Administrative Maximum ("ADX") in Florence, Colorado.  He asserts a negligence claim against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 *et seq.*, and constitutional tort claims against Robert A. Hood, James Burrell, David Duncan, C. Chester and J.C. Zuercher (collectively, "the Federal Officers") under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  He seeks compensatory and injunctive relief.

### A.  Tort Claim Against the United States

In Claim 1, Mr. Ajaj alleges that the United States has negligently failed to follow medical instructions that he be housed in a smoke-free, low-altitude facility.  He also claims that the United States breached its statutory duty under 18 U.S.C. § 4042 to provide him suitable housing.

Mr. Ajaj presented this claim to the Federal Bureau of Prisons ("BOP") in two Standard Form 95s.  In both, Mr. Ajaj claimed that he was denied adequate medical care beginning in 1993, which led to the removal of his left lung in 1997.  He also claimed that medical instructions to house him at low altitude in a smoke-free environment were ignored.

Mr. Ajaj submitted the first Standard Form 95 (Case No. TRT-NCR-2003-00329) to the

BOP in October 2002.  The first claim was denied on April 16, 2003, and the denial letter was

mailed to Mr. Ajaj by certified mail on April 17, 2003.   He submitted the second Standard Form

95 (Case No. TRT-NCR-2004-727) to the BOP in November 2003.  The second claim was

denied on December 9, 2003, on the basis that it was identical to the earlier tort claim.

## B.  Constitutional Claims Against the Federal Officers

Claim 2 is an Eighth Amendment claim.  Mr. Ajaj alleges that the Federal Officers have

failed to protect him from an unreasonable risk of harm by failing to move him to a low altitude,

smoke-free facility.

Claim 3 arises under both the Eighth and Fifth Amendments.[3]  Mr. Ajaj alleges that the

totality of conditions at ADX impose atypical and significant hardships and affect his physical and

mental health.  Such conditions include: (1) limitations on his property rights, mail, access to

telephones and recreation; (2) lock-down for 23 to 24 hours per day; (3) extreme isolation;

(4) imposition of discipline for minor offenses; (5) noise; and (6) lights which remain on in his cell

24 hours per day.  He also alleges that he was not provided procedural due process (*i.e.*, a notice

or a hearing) before his placement in ADX.

Claim 4 is a Fifth Amendment claim.  Mr. Ajaj claims that his placement in the "D unit" at

ADX has deprived him of liberty without due process.  He contends that he is eligible for a "step-

down" into the "K unit" but that this has not occurred.  He also alleges that he has been placed on

single-recreational status in the "A range," which means that he must recreate with the most

violent inmates in the institution.  He asserts that these decisions are arbitrary.

---

[3] Although Mr. Ajaj first refers to the Fourteenth, rather than the Fifth, Amendment, he is a federal prisoner suing federal actors.  Therefore, it is the Fifth Amendment which governs.

Claim 5 is an equal protection claim.  Mr. Ajaj alleges that he has been singled out for different and harsher treatment because he is a Palestinian Muslim.  He alleges, upon information and belief, that similarly situated non-Muslim inmates have been allowed to "step-down," whereas he has not.

Mr. Ajaj submitted several requests for administrative remedies to the BOP.  In Grievance 288433, he complained that he could smell smoke in his cell and that it was bothering him, and he asked that an air filter be installed and that the vents be cleaned.  He made no mention of any doctor's order for his placement in a smoke-free environment until he filed his regional and central office administrative remedy appeals.  The central office denied his appeal on May 27, 2003.

In Grievance 290668, Mr. Ajaj complained that his progress report contained false information, resulting in an improper classification and placement at ADX-Florence in violation of his due process rights.  He also stated that his medical condition required him to be housed at lower altitude in a smoke-free environment.  His request for administrative remedy was denied on the basis that Mr. Ajaj had a history of terrorist activity.  In his regional and central office administrative remedy appeals, he reasserted these complaints.  The central office denied his appeal on May 14, 2003.

In Grievance 293372, Mr. Ajaj asked to be moved to a tobacco-free general population unit, citing the health risks of tobacco smoke.  He also stated that his medical condition required his placement in a smoke-free unit.  He reasserted this claim at the regional and central office levels.  The central office denied this appeal on June 6, 2003.

In Grievance 286714, Mr. Ajaj sought to be removed from total isolation status on the basis that there were no security concerns to keep him there.  He argued that total isolation will

inflict psychological harm and might deprive him of his sanity.  He reasserted this argument at the regional and central office levels.  The central office denied this appeal on April 1, 2003.

In Grievance 302265, Mr. Ajaj asserted that there was no security justification to house him at ADX.  He also contended that the interest of "security" was falsely used as justification for certain restrictions placed upon him.  He raised these same arguments in his regional and central office appeals.  The central office denied this appeal on October 8, 2003.

In Grievance 317901, Mr. Ajaj contended that he should be assigned to the step-down unit (*i.e.*, the K unit) after completion of educational classes that he was still taking in order to honor the administration's pledge to Judge Cameron Currie that this would occur.  In his regional appeal, he re-raised this contention and also asserted that the administration was prejudiced against him.  He raised no claim of discrimination in his central office appeal.  The central office denied this appeal on March 23, 2004.

In Grievance 326096, he claimed that his Fifth Amendment rights were being violated because he was not allowed to attend his "K Unit" review, to present evidence on his behalf, or to contest the evidence presented.  He reasserted this argument in his administrative and central office appeals and further complained that no Arab inmates have been approved for the step-down unit.  The central office denied this appeal on June 7, 2004.

In Grievance 319722, Mr. Ajaj complained that he had been singled out for harsher treatment than other inmates because he is a Muslim Arab.  He re-raised these arguments in regional and central office appeals.  The central office denied his appeal on April 22, 2004.

In Grievance 335565, Mr. Ajaj asked prison officials to refrain from placing him in total isolation (*a/k/a* single recreation status) because it causes psychological harm.  He also claimed

5

that he was placed in total isolation without due process and without justification.  He raised

similar arguments in his regional and central office appeals.  In his central office appeal, he also

argued that Arab and Muslim inmates were being singled out for this status.  His arguments were

rejected on the basis that he was no longer on single recreation status.  The central office denied

this appeal on September 22, 2004.

### III.  Issue Presented

The Court must determine whether any of Mr. Ajaj's claims should be dismissed.

### IV.  Analysis

**A.  United States' Motion to Dismiss**

The United States moves to dismiss Mr. Ajaj's negligence claim for lack of subject matter

jurisdiction for two alternative reasons.  First, it argues that the claim is a negligent placement

claim which falls within the discretionary function exception of the FTCA, found at 28 U.S.C. §

2680(a).  It also argues that the claim was not timely asserted in the district court.  Mr. Ajaj

responds that his claim is one of negligent treatment, not negligent placement, and therefore is not

subject to the discretionary function exception because the United States has a statutory, non-

discretionary duty to provide for the safekeeping of inmates pursuant to 18 U.S.C. § 4042(a).  He

also asserts that the claim was properly exhausted and timely asserted.

Pursuant to Fed. R. Civ. P. 12(b)(1), a party may move to dismiss claims over which the

Court lacks subject matter jurisdiction.  Rule 12(b)(1) motions generally take one of two forms.

*See Stuart v. Colorado Interstate Gas Co.,* 271 F.3d 1221, 1225 (10th Cir. 2001).  The moving

party may either facially attack the complaint's allegations as to the existence of subject matter

jurisdiction, or go beyond allegations contained in the complaint by presenting evidence to

challenge the factual basis upon which subject matter jurisdiction rests. *See Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003). Here, the United States does not rely upon extrinsic evidence. Mr. Ajaj bears the burden of establishing subject matter jurisdiction over his FTCA claim, including the inapplicability of the discretionary function exception. *See Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1167 (10th Cir. 2004).

### **Discretionary Function Exception**

The FTCA is a limited waiver of the United States' sovereign immunity from suit. *See Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005). It allows for suit against the United States for a "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *See id.* (citing 28 U.S.C. § 1346(b)(1)).

There are a few exceptions to the FTCA which, when applicable, require dismissal of a tort claim for lack of subject matter jurisdiction. *See Estate of Trentadue*, 397 F.3d at 853. One of these is the discretionary function exception, found at 28 U.S.C. § 2680(a), which provides:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The discretionary function exception applies to acts which involve an element of judgment or choice. *See United States v. Gaubert*, 499 U.S. 315, 322 (1991). This requirement is not met if a

7

federal statute, regulation or policy specifically requires particular conduct in a given circumstance. *See id.* If such requirement is satisfied, then the discretionary function exception will apply only if the judgment or choice is of a kind which the exception is intended to shield. *See id.* A court should not second-guess legislative and administrative decisions which are grounded in public policy. *See id.*

The United States contends that Mr. Ajaj's negligence claim is one of "negligent placement" and that it has not waived sovereign immunity as to this type of claim. The Court rejects the United States' characterization of Mr. Ajaj's tort claim. Although he challenges his housing assignment, he particularly challenges the United States' alleged failure to provide prescribed medical care in the form of a low-altitude, smoke-free housing assignment. That such prescribed medical care allegedly includes a housing assignment with specific attributes does not convert the claim into a negligent placement claim. Therefore, as pled, the claim is not a negligent placement claim.

The United States does not contend that the discretionary function exception should apply when prison officials negligently fail to provide prescribed medical treatment. This is precisely what is claimed here. Pursuant to 18 U.S.C. § 4042(a)(2), the BOP is required to provide for the safekeeping and care of all prisoners. This statute does not explicitly provide that "safekeeping" or "care" includes provision of prescribed medical treatment. However, the decision whether to provide prescribed treatment – be it in the form of medication, a low-altitude housing assignment, or something else – is not something which non-physician, BOP employees can make. Indeed, to endow such employees with the discretion to decide whether prescribed treatment should be given is arguably contrary to public policy and therefore is not the type of judgment or choice which the

8

discretionary function exception is intended to shield.  Therefore, the Court concludes that the

discretionary function exception does not apply to Mr. Ajaj's FTCA claim.

### Timeliness of Tort Claim

Pursuant to 28 U.S.C. § 2401(b):

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

Although this statute is written with a disjunctive "or", circuit courts agree that it requires a

claimant to: (1) present a tort claim in writing to the federal agency within two years after such

claim accrues, and (2) commence a civil action within six months after a notice of final denial of

the claim is mailed.  *See In re Franklin Savings Corp.,* 385 F.3d 1279, 1287 (10th Cir. 2004),

*cert. denied*, 126 S. Ct. 337 (2005); *see also Ramming v. United States*, 281 F.3d 158, 162 (5th

Cir. 2001) (addressing disjunctive language in the statute); *Willis v. United States*, 719 F.2d 608,

610-13 (2d Cir. 1983) (same).  In addition, a claim must be presented to the federal agency prior

to its assertion in a civil action.  *See* 28 U.S.C. § 2675(a); *Duplan v. Harper*, 188 F.3d 1195,

1199 (10th Cir. 1999).  This is a jurisdictional requirement which cannot be waived.  *See Estate of

Trentadue*, 397 F.3d at 852.

Here, the federal agency's initial denial of Mr. Ajaj's tort claim was mailed to him on April

17, 2003.  He had six months from that date to assert his tort claim in a civil action.  He

commenced this action on September 22, 2003, but did not assert any tort claims against the

United States until he filed his First Amended Complaint on December 17, 2003.

The question, therefore, is whether the claim should be treated as having been asserted in the original Complaint. Pursuant to Fed. R. Civ. P. 15(c), an amendment of a pleading relates back to the original pleading when:

> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Of these three circumstances, only subsection (2) has potential application. However, the tort claim did not arise out of the conduct, transaction, or occurrence set forth in the original Complaint. Indeed, in his original Complaint, Mr. Ajaj asserted claims against Robert A. Hood, FNU Smith and FNU Braren for the manner in which they allegedly handled his mail and other property. Therefore, the claim does not relate back to the filing of the original Complaint.

This does not end the inquiry, however. Mr. Ajaj submitted a second Standard Form 95 after this lawsuit commenced but before he asserted any tort claims against the United States. The federal agency denied such claim before Mr. Ajaj asserted his tort claim in this action. Mr. Ajaj contends that this sufficiently exhausted the tort claim. The United States disagrees,

contending that the Court in this instance should look to the date the original complaint was filed[4] – rather than the date that the FTCA claim was first asserted – and should treat the presentment of the Form 95 as untimely.

The United States' position is disingenuous.  Under 28 U.S.C. § 2401(b), a tort action must be "begun" within six months of the mailing of the denial letter.  For purposes of such statute, this tort action "began" on December 17, 2003 because the FTCA claim did not relate back to the filing of the original Complaint.  Under 28 U.S.C. § 2675(a), an "action shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."  The term "instituted" is not defined in the statute.  However, the transitive verbs "institute" and "begin" are practically synonymous, particularly when used to describe the commencement of a civil action.  Therefore, this Court concludes that this action "began" at the same time it was "instituted" for purposes of the FTCA claim.[5]  Because Mr. Ajaj's tort claim was denied by the agency before he asserted it in this action, the claim is timely asserted.

## B.  Federal Officers' Motion to Dismiss

Although its caption suggests that it is brought only under Fed. R. Civ. P. 12(b)(6), the Federal Officers move to dismiss all claims against them pursuant to both Rules 12(b)(1) and (6). They first contend that they cannot be sued in their official capacities because there is no waiver of sovereign immunity.  They further assert that Mr. Ajaj failed to satisfy the exhaustion

---

[4] This action commenced on September 22, 2003.  Mr. Ajaj's original Complaint was filed on October 2, 2003,  after the Magistrate Judge granted his motion to proceed *in forma pauperis*.

[5] The United States has pointed to no legal authority for a contrary interpretation, and this Court's research has revealed none.

requirements of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), and that they are entitled to qualified immunity on Claims 2 and 4.  Mr. Ajaj agrees that Claims 2 through 5 against the Federal Officers in their official capacities can be dismissed.  However, he contends that he has exhausted his administrative remedies as to all claims and that the Federal Officers are not entitled to qualified immunity on Claims 2 and 4.

### Exhaustion of Administrative Remedies

The PLRA, 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The exhaustion of administrative remedies under this statute is a mandatory prerequisite to suit.  *See Porter v. Nussle,* 534 U.S. 516, 524 (2002).  The PLRA's exhaustion requirement is considered a "total exhaustion rule."  *See Ross v. County of Bernalillo*, 365 F.3d 1181, 1182 (10th Cir. 2004).  This means that if a single claim is unexhausted, the Court must dismiss all claims, including any exhausted claims, without prejudice.  *See id.* at 1189.

When an unexhausted claim is asserted in a complaint, it is insufficient to exhaust administrative remedies as to such claim during the pendency of the lawsuit.  *See Steele v. Federal Bureau of Prisons,* 355 F.3d 1204, 1207 (10th Cir. 2003), *cert. denied*, 543 U.S. 925 (2004).  However, at least one circuit court has concluded that an inmate may pursue newly exhausted claims in an amended complaint without contravening the objectives of the PLRA.  *See Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005).  Indeed, this meets with one of the PLRA's primary objectives – to allow the BOP the first shot at resolving a claim about prison conditions before such claim is asserted in federal court.  The Federal Officers have cited no law

12

to the contrary, and this Court's research has revealed none.

An inmate must affirmatively plead exhaustion in his complaint, or his claims may be dismissed under Fed. R. Civ. P. 12(b)(6).  *See Steele,* 355 F.3d at 1209-10.  This requires the inmate to attach copies of his administrative dispositions to the complaint or, absent such documentation, to specifically describe the administrative proceedings and their outcome.  *See id.* at 1210-11.

The BOP has a three-step procedure for addressing inmate grievances.  *See* 28 C.F.R. §§ 542.13, 542.14 & 542.15.  An inmate first submits a Request for Administrative Remedy (Form BP-9) to the Warden.  If unsatisfied with the resolution of such request, he may appeal it by submitting a Regional Administrative Remedy Appeal (Form BP-10) to the Regional Director and a Central Office Administrative Remedy Appeal (Form BP-11) to the Director of National Inmate Appeals.

Mr. Ajaj exhausted administrative remedies with respect to Claims 2 through 5 prior to asserting them in this lawsuit.  Although some claims were exhausted after the original Complaint was filed, they were not asserted in this action until after he availed himself of the BOP's grievance process.  Therefore, the Court turns to the Federal Officers' qualified immunity argument.

### Qualified Immunity

The Federal Officers assert an entitlement to qualified immunity on Claims 2 and 4.  Qualified immunity is a protection from trial and other burdens of litigation.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see also Jones v. Hunt*, 410 F.3d 1221, 1225 (10th Cir. 2005).  When facing a claim for civil damages under *Bivens*, a federal officer is entitled to

qualified immunity if his conduct did not violate a clearly established statutory or constitutional right of which a reasonable officer would have known. *See Wilson v. Layne,* 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1247 (10th Cir. 2003). The doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *See Roska*, 328 F.3d at 1251 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In response to the Federal Officers' claim of qualified immunity, Mr. Ajaj bears the heavy burden of demonstrating[6] that: (1) the Federal Officers violated a constitutional or statutory right; and (2) the right was clearly established at the time of their unlawful conduct. *See Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). Under this two-pronged test, the Court first determines whether a constitutional right was violated. This inquiry requires the Court to evaluate all allegations in the Third Amended Complaint in the light most favorable to Mr. Ajaj. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Denver Justice and Peace Committee, Inc. v. City of Golden*, 405 F.3d 923, 927 (2005). If the allegations are sufficient to support the first prong, then the Court determines whether the constitutional right was clearly established. *See Saucier,* 533 U.S. at 201. This inquiry is made in light of the specific context of the case, not as a broad general proposition. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier*). However, the particular officer's subjective understanding of the law is not pertinent to this analysis. Whether the law was clearly established is essentially a legal question and is measured by an objective standard. *See Crawford-El v. Britton,* 523 U.S. 574, 589-90 (1998). Although

---

[6] Because the motion is asserted under Fed. R. Civ. P. 12(b)(6), the Court considers the allegations of the Third Amended Complaint to determine whether such demonstration is made.

Mr. Ajaj is not required to identify a factually identical case to demonstrate that the constitutional right was clearly established, however, he should identify a Supreme Court or Tenth Circuit opinion on point, or demonstrate that the right is supported by the weight of authority from other courts. *See Robbins v. Wilkie*, 433 F.3d 755, 764 (10th Cir. 2006). With these standards in mind, the Court turns to Claims 2 and 4.

With regard to Claim 2, the Federal Officers contend that Mr. Ajaj cannot establish that there was a violation of a constitutional right because he did not allege facts to support the subjective component of a deliberate indifference claim with regard to Defendants Chester and Zuercher.[7] They further contend that he cannot establish that any rights were clearly established. Mr. Ajaj responds that he has alleged sufficient facts to support an Eighth Amendment claim and that the law governing such claim was clearly established at the time of the alleged violation.

The Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim of deliberate indifference has two components: (1) an objective component requiring that the pain or deprivation be sufficiently serious; and (2) a subjective component requiring that the offending officials act with a sufficiently culpable state of mind. *See Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993). A medical need is serious if it either has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would recognize the necessity for treatment. *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). As to the subjective component, a prisoner must allege more than a negligent failure to provide medical treatment. *See Handy*, 996 F.2d at

---

[7] The Federal Officers concede in their reply that Mr. Ajaj alleges sufficient facts to support the subjective component *vis a vis* Defendants Hood, Burrell and Duncan.

1067.  Instead, the prisoner must allege facts supporting an unnecessary and wanton infliction of pain, in particular, that the official knew about and disregarded an excessive risk of harm to the inmate's health.  *See Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

Here, Mr. Ajaj alleges sufficient facts to support the objective component.  He alleges that a prison doctor recommended that he be housed in a smoke-free, low altitude environment.  Therefore, because his need for such a housing assignment was allegedly recognized by a physician, the objective component is satisfied.

However, the Third Amended Complaint is devoid of any allegations that Defendants Chester or Zuercher knew about the doctor's recommendation and failed to act on it.  Instead, Mr. Ajaj simply alleges that he was within their custody and control.  Therefore, he has not stated a *prima facie* Eighth Amendment claim against Defendants Chester and Zuercher.

In his response to the motion to dismiss, Mr. Ajaj contends that his grievances show that Defendants Chester and Zuercher knew about his medical condition or needs.  However, he does not contend that these Defendants knew about the doctor's recommendation yet deliberately failed to follow it.  Because conclusory allegations are not sufficient to support a civil rights claim, *see Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and Mr. Ajaj has not identified any factual allegations which can be made against Defendants Chester and Zuercher that would be sufficient to support an Eighth Amendment Claim, the Court dismisses Claim 2 as to these Defendants pursuant to Fed. R. Civ. P. 12(b)(6).[8]

---

[8] Such dismissal is not on grounds of qualified immunity, because Mr. Ajaj also seeks injunctive relief on this claim.

Since at least 1993, courts have recognised that exposing an inmate to unreasonably high levels of second-hand smoke can violate the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 35 (1993). It is also long established that delaying an inmate's prescribed medical treatment can violate the Eighth Amendment. *See Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). Construing the alleged facts most favorably to Mr. Ajaj, any amount of second-hand smoke was unreasonably high given the doctor's recommendation, and the failure to move him to a smoke-free, low altitude environment constituted a delay in the doctor's prescribed course of treatment. Therefore, the Court will not dismiss Claim 2 as to Defendants Hood, Burrell and Duncan.

With regard to Claim 4, the Federal Officers argue that Mr. Ajaj cannot establish that he had a protected liberty interest in stepping down to a less restrictive housing unit at ADX or that he was denied adequate process. Mr. Ajaj responds that the restrictive conditions placed upon his confinement implicate a liberty interest, and that he has been denied a "meaningful review" as to whether he should be placed in a less restrictive unit.

A procedural due process claim has two components: (1) the deprivation of a liberty or property interest; and (2) the absence of adequate process. *See Boutwell v. Keating*, 399 F.3d 1203, 1211-12 (10th Cir. 2005); *Hulen v. Yates*, 322 F.3d 1229, 1247 (10th Cir. 2003). An inmate's housing assignment generally does not implicate a liberty interest. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). However, if the inmate's housing assignment imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," then a liberty interest may be implicated. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wilkinson v. Austin*, 125 S. Ct. 2384 (2005).

17

Mr. Ajaj has alleged minimally sufficient facts to identify a liberty interest.  In particular, he claims that for an indefinite period he has been placed in special confinement outside the general prison population in isolation.  He also claims that the conditions of his confinement are not typical of the general population or ordinary prison life because he is subject to extreme isolation and other limitations.   However, nowhere in his Third Amended Complaint does Mr. Ajaj identify the process he believes he should have been, but was not, afforded prior to or after his placement in special confinement.  Instead, his allegations suggest that he simply is unhappy with the ultimate decision not to place him in a less restrictive housing assignment.  Therefore, his allegations are conclusory and thus insufficient to support a *prima facie* procedural due process violation.  The Court dismisses Claim 4 pursuant to Fed. R. Civ. P. 12(b)(6).[9]

**IT IS THEREFORE ORDERED** that:

(1)     The Court withdraws the reference from the Magistrate Judge of the Plaintiff's Unopposed Motion to Re-File Third Amended Complaint **(#165)**.  Such motion is **GRANTED IN PART** and **DENIED IN PART**.  The Plaintiff's revised Third Amended Complaint, attached to the motion, shall be accepted for filing effective November 16, 2005.

(2)     The United States' Motion to Dismiss **(#162)** is **DENIED**.

(3)     The Federal Officers' Motion to Dismiss **(#163)** is **GRANTED IN PART** and **DENIED IN PART**.  Claim 2 is dismissed as to Defendants Chester and Zuercher. Claim 4 is dismissed as to all of the Federal Officers. To the extent that Claims 2, 3

---

[9] Such dismissal is not on grounds of qualified immunity because Mr. Ajaj also seeks injunctive relief on this claim.

and 5 are asserted against the Federal Officers in their official capacities, such

claims are dismissed

Dated this 11th day of May, 2006

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge